**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:20-cr-00019-JCM-NJK |
| vs. | REPORT AND RECOMMENDATION |
| BARRY ALLEN GABELMAN, | (Docket No. 31) |
| Defendant. | |

This matter was referred to the undersigned Magistrate Judge on Defendant Barry Allen Gabelman's motion to suppress evidence. Docket No. 31. The Court has considered Defendant's motion and exhibits, the United States' response, and Defendant's reply. Docket Nos. 31, 38, 45.

I. **BACKGROUND**

On October 31, 2019, Defendant, using the name "BG," contacted an undercover Federal Bureau of Investigation ("FBI") agent via the social media application "SKOUT." Docket No. 31-1 at 2.[1] The agent's undercover persona was named Cam and he had advertised in his undercover SKOUT profile that he was an active dad,[2] had kids, and was looking for like-minded freaks in Las Vegas. *Id*. After Defendant contacted Cam, the two began exchanging online messages,

---

[1]     Both parties relied upon the discovery provided by the United States for their recitation of facts. *See, e.g.*, Docket No. 31 at 2 n. 2; Docket No. 38 at 2-5. The Court therefore derives its factual background from the same documents.

[2]     The undercover agent used the term "active dad" in Cam's profile to signify to people who are interested in pedophilia and/or sex with children that Cam was "'actively' engaged in sex with minors to include [his] biological children, step[-]children, or other children" to whom he had access. Docket No. 31-1 at 3.

which included sexual discussions and discussions about having sex with young girls.  *Id.* at 2-3,

Docket No. 31-4 at 17.  The conversation turned to Cam's 11-year old daughter Ellie, at which

time Defendant asked for pictures of the girl and suggested that the conversation move to

WHATSAPP, which is a more secure online platform on which to communicate.  Docket No. 31-

1 at 3.  In order to use WHATSAPP, Defendant and Cam were required to exchange cell phone

numbers and the FBI learned that the number provided by Defendant had his name as the

subscriber.  *Id.*  In addition, Defendant's name was consistent with the initials BG that he used on

SKOUT and his driver's license photograph was consistent with the profile pictures he posted on

his SKOUT account.  *Id.*

During this conversation, Defendant asked Cam for pictures of Ellie's body parts.  Docket

No. 31-4 at 18.  Defendant also discussed the type of pain Ellie would feel while he engaged in

intercourse with her.  *Id.* at 19.  At one point, Defendant stated that he wanted to hear Ellie scream

in pain during the act of sexual intercourse.  *Id.* at 23.

During the course of the chats, Defendant also started chatting online with 11-year old

Ellie.[3]  Docket No. 31-3 at 4.  During these chats, Ellie told Defendant that she was 11 years old.

*Id.*  Defendant spoke to Ellie in sexual language, including telling her about the size of his penis

and telling her that he wished he knew what her vagina looked like.  *Id.*  Additionally, Defendant

sent Ellie a picture of his penis during the chats.  *Id.* at 3; Docket No. 31-4 at 20.  Defendant

repeatedly asked for a picture of Ellie's vagina; however, Cam continually stated that he did not

want such picture transmitted over the Internet.  *Id.* at 21.

_____

[3]        Ellie was, in actuality, the same undercover FBI agent who spoke to Defendant as Cam.

2

Eventually, after numerous chats, Defendant and the undercover agent determined that Defendant would meet Ellie to engage in sexual acts with her on December 6, 2019, at a predetermined location – an RV park at Nellis and Flamingo Road. *Id*. at 23. On that date, agents observed Defendant traveling via bus to that location and, when he arrived at the RV park, agents visually confirmed that Defendant matched the known photographs of Barry Gabelman. *Id*.

When he arrived at the RV park, Defendant texted Cam and the two engaged in some text messaging. *Id*. Surveilling agents observed Defendant physically texting on his phone during this period of time. *Id*. As Defendant opened the door of the RV that he thought contained Ellie, he was approached by FBI agents. *Id*. at 24. The agents found a condom in Defendant's pocket. *Id*. Agents told Defendant he was not under arrest and informed him of his *Miranda* rights, which he waived. Docket No. 31-3 at 2. During the interview, agents asked Defendant for consent to search his cell phone and told him he should not feel forced or compelled to consent to the search. *Id*. at 5. Agents provided consent forms to Defendant, which he read and signed. *Id*. told Defendant he should not feel forced or compelled to consent to the search. *Id*. Agents examined the cell phone in Defendant's presence and found the messages that BG had exchanged with Cam and Ellie. Docket No. 31-4 at 25. Agents also found the picture of his penis that Defendant sent to Ellie on his phone. *Id*.

After the interview ended, Defendant asked for his phone to be returned and revoked his consent to search it. *Id*. at 25 n.1. Agents enabled certain software during the interview so that Defendant would retain access to non-contraband information on his phone, such as pictures of his son. Docket No. 31-5 at 2. Agents drove Defendant to his residence; however, the FBI retained his cell phone in order to obtain a search warrant. Docket No. 31-4 at 25. Later that day, FBI Special Agent (SA) Skyler Penrod received a phone call from Defendant, who said he wanted his

3

cell phone returned to him as soon as possible.  Docket No. 31-5 at 2.  SA Penrod told Defendant that his phone was evidence and could not be returned during the investigation of the case.  *Id*.  On December 7, 2019, Defendant sent SA Penrod two e-mails, in which he expressly revoked his consent to search his cell phone and demanded its return.  *Id*.

Defendant's cell phone was entered into FBI evidence "at the earliest date and time possible on December 9, 2019."  Docket No. 31-4 at 25.  On December 12, 2019, the United States applied for and obtained a search warrant to search Defendant's cell phone.  *See, generally,* Docket No. 31-4.

On January 15, 2020, a complaint was issued, charging Defendant with one count of coercion and enticement, in violation of Title 18, United States Code, Section 2422(b) and one count of transfer of obscene material to minor, in violation of Title 18, United States Code, Section 1470.  Docket No. 1.  Defendant was arrested on the complaint and appeared for his initial appearance before the Court on January 21, 2029.  Docket No. 4.  On February 4, 2020, a federal grand jury sitting in Las Vegas, Nevada issued an indictment, charging Defendant with the same charges as those in the complaint.  Docket No. 17.

**ANALYSIS**

    **A.    Evidentiary Hearing**

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist.  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir.

1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

"A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979). In the instant case, Defendant requested an evidentiary hearing; however, both parties relied upon the same discovery in presenting the facts.[4] The Court concludes that no contested issues of fact exist that require an evidentiary hearing in this matter, and the Court will therefore decide the motion on the moving and responsive papers, including the exhibits submitted with the papers.

### B.    Motion to Suppress

Defendant asks the Court to suppress any evidence the United States obtained from his cell phone after he revoked his consent. Docket No. 31. In support of his motion, Defendant submits that he clearly revoked his consent to search his cell phone at the end of his interview "and several times thereafter verbally and in writing." *Id*. at 3. Defendant submits that any further search of his phone after the revocation of his consent is illegal. *Id*. Defendant further submits that the United States illegally seized his phone after he revoked consent and that the search warrant does

---

[4]    In reply, Defendant asks for an evidentiary hearing regarding the six-day delay between seizure of his cell phone and the issuance of the search warrant. Docket No. 45 at 3. Defendant fails however, to present any contested issues of fact regarding the six days and the Court finds that an evidentiary hearing is unnecessary.

5

1 | not remedy that illegal seizure. *Id*. at 3-4. Defendant therefore asks the Court to suppress all

2 | evidence obtained from his phone after the revocation of his consent.[5] *Id*. at 4.

3 |     In response, the United States submits that, during the time that agents examined

4 | Defendant's cell phone pursuant to his consent, they found evidence relevant to the case, including

5 | text messages and the photographs of his penis that he sent to Ellie. Docket No. 38 at 4. As a

6 | result, the United States submits, after Defendant revoked his consent to search the phone, agents

7 | told him he would not receive it back due to the evidence that was on it. *Id*. at 5. The United

8 | States further submits that agents allowed Defendant to save photographs of his son that were on

9 | his phone to a separate location before they seized the phone. *Id*. Additionally, the United States

10 | submits that the interview with Defendant occurred on a Friday afternoon, December 6, 2019, and

11 | that the cell phone was entered into FBI evidence the next Monday, December 9, 2019, which was

12 | the earliest date and time possible to do so. *Id*.

13 |     The United States submits that agents spent the next three days working on the search

14 | warrant affidavit and submitted a draft affidavit in support of a search warrant for the phone to the

15 | United States Attorney's Office ("USAO") on Tuesday, December 10, 2019; edits between the

16 | agents and the USAO occurred between December 10, 2019 and December 12, 2019; and the

17 | search warrant was submitted to a magistrate judge and issued on December 12, 2019. *Id*. On

18 |

19 |

20 | [5]     Defendant alternatively requests an evidentiary hearing "to permit further factual development." *Id*. at 4. Defendant fails, however, to cite to any authority or to develop his argument in any manner as to what further factual development would be necessary or why this request is an "alternative" to his request for suppression. He relies, instead, on one bare sentence at the end of his conclusion to his motion. *Id*. Courts address only well-developed arguments. *See, e.g.*, *On Demand Direct Response, LLC v. McCart-Pollak*, 2018 WL 2014067, at *1 & n.2 (D. Nev. Apr. 30, 2018). Therefore, the Court need not address this request.

December 20, 2019, the United States submits, agents examined Defendant's cell phone and found evidence relevant to the instant case. *Id*.

The United States submits that Defendant concedes he initially consented to the agents' examination of his cell phone, and that consent is an established exception to the warrant requirement. *Id*. at 5-6. The United States further submits that agents acted properly by discontinuing their search of Defendant's cell phone pending a warrant after he revoked his consent. *Id*. at 6. Additionally, the United States submits, the agents' warrantless seizure of Defendant's cell phone pending the search warrant was supported by probable cause and the United States acted promptly and reasonably in obtaining a search warrant for the phone. *Id*. at 13. Finally, the United States submits that, even if the Court determines that Defendant's revocation of consent precludes admission of the evidence found during the consent search, the evidence is still admissible under the independent search doctrine due to the search of Defendant's cell phone that was conducted pursuant to a valid search warrant.[6] *Id*. at 13-14. Therefore, the United States asks the Court to deny Defendant's motion to suppress evidence. *Id*. at 15.

In reply, Defendant submits that the United States improperly seized his cell phone after he revoked his consent and that the case cited by the United States in support of its actions is distinguishable. Docket No. 45 at 2. Defendant further submits that cell phones are different than documents in a person's home and, therefore, his privacy interest is greater. *Id*. Defendant submits that, "consistent" with the case cited by the United States that the government could enter documentary evidence it seized prior to a defendant's revocation of consent, Defendant agrees that the United States can "introduce testimonial evidence of what the agents saw [when] they scrolled

---

[6]    The Court is uncertain of the purpose of this argument, as Defendant's motion argues that <u>only</u> the evidence found during the consent search is admissible. *See* Docket No. 31.

through [his] phone with his consent."[7]  *Id*.  Defendant further submits that any evidence found on his cell phone after he revoked his consent is inadmissible.  *Id*.

Defendant submits that the delay between when the agents seized his cell phone and when they obtained a search warrant was unreasonable, under the totality of the circumstances.  *Id*. at 3. Specifically, Defendant states, cell phones constitute a large portion of the average adult's life; therefore, the seizure of his phone constituted a significant intrusion on his privacy and possessory interest in the phone.  *Id*.  Defendant further submits, without any authority, that the Court "needs" to set an evidentiary hearing to allow for the factual development of the events that occurred between the time agents seized his cell phone and the time agents obtained a search warrant for the phone, to make a determination as to whether the delay was reasonable.  *Id*.  Finally, Defendant submits that the United States did not have a significant interest in retaining his phone due to the evidence found on it because it already had a mirror image[8] of the chats in its possession.  *Id*.

**1.  Seizure of Cell Phone**

Defendant argues that the seizure of his cell phone, after he revoked consent, was unlawful.[9]  In support of his argument, Defendant cites to *Jones v. Berry*, 722 F.2d 443 (9th Cir.

---

[7]      Defendant relies on no authority to explain the discrepancy between the case cited, which allows documentary evidence, and his position, which only allows for testimonial evidence.  *Id*.

[8]      "Mirror image" is a specific technical term meaning "a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space," on a digital drive.  *Communications Center, Inc. v. Hewitt*, 2005 WL 3277983, at *1 (E.D.Cal. 2005).  The Court could find no evidence that agents imaged Defendant's cell phone prior to his revocation of consent.  *See* Docket Nos. 31-3, 31-4.  Instead, it appears that Defendant is arguing that, since agents have their own copy of the chats on their devices, they did not need to seize his cell phone.

[9]      The parties agree that Defendant initially consented to the examination of his cell phone. The parties further agree that Defendant had the right to revoke his consent and that he did so prior to leaving the location where he was being interviewed.  The parties also agree that Defendant expressly revoked his consent again in the days to follow.  The Court, therefore, need not address whether Defendant consented to the examination of his cell phone or revoked his consent.

1983), which he submits for the proposition that, "if the revocation of consent occurs before the government completes its search, any further search would be illegal." Docket No. 31 at 3. In *Jones*, a wife consented to a search of her second residence for certain records. *Jones*, 722 F.2d at 449. After the search was conducted and the records were found and seized, the husband revoked consent. *Id*. The Court held that, if the revocation had occurred prior to the conclusion of the search, the IRS agents would have had to stop the consent search of the residence. *Id*.

In this instance, the Court finds that agents complied with *Jones*, as they did not continue the consent search of the cell phone after Defendant revoked his consent. Instead, they seized it in order to obtain a search warrant to continue the search. The Court finds that the agents acted properly in so doing. *See Riley v. California*, 573 U.S. 373, 388 (2014) (law enforcement officers may seize a cell phone "to prevent destruction of evidence while seeking a warrant"); *United States v. Cerna*, 2009 WL 5125920 (N.D.Cal. 2009) (where defendant revoked consent to search digital devices and asked for their return, government properly retained seized items and obtained search warrant to search them). *See also United States v. Jacobsen*, 466 U.S. 109, 121–22 (1984) ("it is well-settled that it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband"); *Texas v. Brown*, 460 U.S. 730, 749–50 (1983) ("[I]f there is probable cause to believe [a container] contains contraband ... [t]he item may be seized temporarily" while officers seek a warrant to search it).

---

Additionally, the Court need not address the suppression of evidence found prior to the revocation of Defendant's consent, as Defendant does not make that argument. In any event, "[n]o claim can be made that items seized in the course of a consent search, if found, must be returned when consent is revoked. Such a rule would lead to the implausible result that incriminating evidence seized in the course of a consent search could be retrieved by a revocation of consent." *Jones v. Berry*, 722 F.2d 443, 449 n. 9 (9th Cir. 1983).

### 2. Delay Between Seizure and Search Warrant

Defendant next contends that the 6-day delay between the seizure of his cell phone and when the United States obtained the warrant to search it was unreasonable. A temporary warrantless seizure supported by probable cause is reasonable as long as "the police diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*, 531 U.S. 326, 334 (2001). The Supreme Court has held that, "rather than employing a per se rule of unreasonableness," a court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Id.* at 331 "An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights. The touchstone is reasonableness." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). In determining reasonableness, courts "must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

There is no bright line date past which a delay becomes unreasonable. *See Sullivan*, 797 F.3d at 632-634 (21 day delay in seeking search warrant for laptop not unreasonable); *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988) (7 to 23-day delay in seeking search warrant after removing packages from the mail unreasonable); *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012) (25-day delay in obtaining warrant to search defendant's computer reasonable); *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012) (6-day delay between seizure of cell phone and time police secured a warrant to search not unreasonable); *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (21-day delay in obtaining search warrant for defendant's laptop unreasonable); *United States v. Uu*, 293 F.Supp.3d 1209 (D. Haw. 2017) (20-day delay in seeking search warrant of backpack unreasonable). Instead, the Court determines the reasonableness of the delay on a

case-by-case basis under the totality of the circumstances, and "not whether the Government pursued the least intrusive course of action." *Sullivan*, 797 F.3d at 633. In evaluating the totality of the circumstances, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*.

In making this determination, courts consider various factors, such as the significance of the interference with the person's possessory interest, *see Mitchell*, 565 F.3d at 1351; the duration of the delay, *see Place*, 462 U.S. at 709 (characterizing the "brevity" of the seizure as "an important factor"); whether or not the person consented to the seizure, *see Sullivan*, 797 F.3d at 633-634; and fourth, the government's legitimate interest in holding the property as evidence, *see Burgard*, 675 F.3d at 1033. These factors are by no means exhaustive, but they are most relevant when courts seek to "balance the privacy-related and law enforcement-related concerns," *McArthur*, 531 U.S. at 331, at stake. "Given the complex interactions of these factors, this balancing calculus is fact-intensive and it is therefore unwise to establish a duration beyond which a seizure is definitively unreasonable or … even presumptively unreasonable." *Laist*, 702 F.3d at 614.

In assessing the delay, courts review law enforcement's diligence in pursuing the investigation and the complexity of the investigation. *Id*. When law enforcement officers "neglect to seek a warrant without any good explanation for that delay, it appears that the [government] is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033. Thus, even if a defendant has a diminished possessory interest in the seized item, "the Fourth Amendment still requires the government to diligently obtain a warrant." *Laist*, 702 F.3d at 616.

The Court finds that the government has a strong interest in searching the cell phone for evidence of this case given that agents saw relevant evidence on the phone during the consent search and a magistrate judge has determined, in issuing the search warrant, that probable cause existed to search it.  Further, the Court agrees that a cell phone is much more than just a phone; rather, it is a computer that can contain vast amounts of information.  *See Laist*, 702 F.3d at 614 ("computers are a unique possession, one in which individuals may have a particularly powerful possessory interest").  Additionally, the Court recognizes that Defendant revoked his consent and requested that the phone be returned at the end of his interview, he was out of custody when he made that request, and he was not on probation or parole at the time of the alleged offense.

After carefully analyzing the issues in this case, the Court finds, as the Court did in *Laist*, that Defendant's possessory interest in the contents of his cell phone was diminished.  As the United States submits, and Defendant does not contest, agents allowed Defendant to remove information from his cell phone before its seizure.  "Since the possessory interest in a computer derives from its highly personal contents, the fact that [Defendant] had a real opportunity to copy or remove personal documents reduces the significance of his interest."  *Laist*, 702 F.3d at 616.  Further, as in *Laist*, Defendant did not request any further information from the cell phone after he revoked his consent, and no indication exists that such request would have been denied.  *See id*.  Additionally, during the consent search, agents found – and Defendant admitted to the accuracy of – chats and a picture of his penis that constituted evidence in the instant case.  As in *Laist*, the existence of this evidence on Defendant's cell phone "both diminishes [Defendant's] interest further while also enhancing the government's legitimate interest in maintaining custody of the [cell phone] as substantial evidence of a serious federal crime."  *Id*.  Therefore, the Court finds that

the United States' legitimate interest in the cell phone outweighs any possessory interest in it that Defendant maintained.

Still, the Fourth Amendment obligated the United States to "diligently obtain[ ] a warrant." *McArthur*, 531 U.S. at 334. In this case, the delay between the seizure of Defendant's cell phone and the date the search warrant was submitted and obtained was six days. The interview ended and Defendant was returned home after business hours on Friday, December 6, 2019. Over the next three days, agents worked on the search warrant affidavit, which they presented to the USAO on Tuesday, December 10, 2019. The USAO and agents then engaged in editing the document over the next two days, and the search warrant was submitted to a magistrate judge and issued on December 12, 2019. The Court therefore finds – under the totality of the circumstances - that the government acted diligently in obtaining the search warrant. Therefore, the Court also finds that the six-day delay was reasonable. *See Laist*, 702 F.3d at 616-617.[10]

## II.    RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that Defendant's motion to suppress evidence, Docket No. 31, be **DENIED**.

DATED: May 5, 2020.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

_____
[10]    As the Court finds that the delay was reasonable in the instant case, it need not engage in a detailed analysis of the United States' independent source argument. The Court has, however, analyzed the argument and finds that it would provide a separate basis for admission of the evidence found on Defendant's cell phone after he revoked his consent.

13

**<u>NOTICE</u>**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).